# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

_____

CHERYL A. DARBY,

                          Plaintiff,

      v.                                         5:11-CV-1442
                                                  (NAM/ATB)

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.

_____

MICHAEL J. TELFER, ESQ., Olinsky Law Group, for Plaintiff
KATRINA LEDERER, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT RECOMMENDATION

This matter was referred to me for report and recommendation by the

Honorable Norman A. Mordue, United States District Judge, pursuant to 28 U.S.C.

§ 636(b) and Local Rule 72.3(d).  This case has proceeded in accordance with

General Order 18.

## I.    PROCEDURAL HISTORY

On November 30, 2006, Cheryl A. Darby ("plaintiff") protectively filed[1] for

Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"),

with an onset date of October 1, 2006.  (Administrative Transcript ("T") 117–121).

Plaintiff alleges that she is disabled due to: Chronic Obstructive Pulmonary Disease

("COPD"), depression, chronic lower back pain, and fatigue.  (T. 159–62).  Plaintiff's

---

[1] Protective filing indicates that a written statement has been filed with the Social Security Administration, indicating the claimant's intent to file a claim for benefits.  *See* C.F.R. § 416.340. There are various requirements for this written statement.  (*Id.*).  If a proper statement is filed, the Social Security Administration will use the date of the written statement as the filing date of the application even if the formal application is not filed until a future date.

claims were initially denied on April 24, 2007.  (T. 71–74).  Plaintiff requested a

hearing before an Administrative Law Judge ("ALJ") which was held on March 3,

2009.  (T. 12–26).  On July 27, 2009, the ALJ found plaintiff was not disabled.  (T.

15–26).  On October 18, 2011, the Appeals Council denied a request for review.  (T.

1–13).

## II.    APPLICABLE LAW

### A.    Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or

SSI disability benefits must establish that she is "unable to engage in any substantial

gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than twelve months . . ."  42

U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity
> that he is not only unable to do [her] previous work but cannot,
> considering [her] age, education, and work experience, engage in any
> other kind of substantial gainful work which exists in the national
> economy, regardless of whether such work exists in the immediate area
> in which [she] lives, or whether a specific job vacancy exists for [her], or
> whether [she] would be hired if [she] applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. § 404.1520

and in 416.920 to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity.  If [she] is not, the
> [Commissioner] next considers whether the claimant has a "severe
> impairment" which significantly limits [her] physical or mental ability to

basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [she] has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

## B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 197 U.S. 229 (1938)); *Williams*, 859 F.2d at 258.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id.* *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III.   FACTS

Plaintiff's counsel has reviewed the facts extensively in his memorandum of law. Defense counsel has incorporated plaintiff's summary of the case, with additional supporting facts. This court will also adopt the facts as stated by both parties, with any exceptions noted in the following discussion.

4

## IV.    THE ALJ'S DECISION

The ALJ found the claimant had not engaged in substantial gainful activity[2] and had multiple severe impairments, including: COPD with sarcoidosis, chronic low back pain, impulse control disorder, and bipolar/affective disorder.  (T. 17).  However, the ALJ did not find the claimant had an impairment, or combination of impairments, which met or was medically equivalent to one of the listed impairments in 20 C.F.R.  part 404, Subpart P, Appendix 1.  After consideration of the entire record, the ALJ found plaintiff had the residual functional capacity ("RFC") to: lift and/or carry up to 50 pounds occasionally and 25 pounds frequently; stand and/or walk for six hours in an eight-hour day; sit for 6 hours in an eight-hour day; push and/or pull 50 pounds occasionally and 25 pounds frequently; understand, carry out, and remember simple and some detailed instructions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting.  (T. 20).  The only additional restriction listed in the RFC was for plaintiff to avoid concentrated exposure to respiratory irritants.  (*Id.*).

### A.    Physical Impairments

The ALJ found that the evidence did not support the extent of plaintiff's claims of pain and physical limitation.  When discussing plaintiff's respiratory condition, the ALJ cited to medical records which revealed no rales, rhonchi, or wheezing.  (T. 21).  The ALJ also cited an x-ray of plaintiff's lumbosacral spine taken in February 2007, which revealed no medical impairment to this part of her spine.  (*Id.*).  The ALJ

---

[2] The ALJ found that although plaintiff worked during the period in question, the work activity did not rise to the level of substantial gainful activity.  (T. 17.)

discounted plaintiff's credibility, noting that she testified she walked over a mile to different appointments, climbed two sets of stairs regularly to enter her apartment, and engaged in social activities outside of her home. (*Id*.)*.*

## B.    Mental Impairments

The ALJ found that the evidence did not support the mental limitations claimed by plaintiff. The ALJ highlighted that during all psychological evaluations, plaintiff maintained fluent speech, adequate expressive and receptive language skills, coherent and goal-directed thought processes, intact attention, and grossly intact recent and remote memory skills. (T. 23). There was no indication of hallucinations, delusions, or paranoia. (*Id*.). The ALJ noted plaintiff's therapist, Ziva Levy, reported only slight limitations in plaintiff's ability to interact appropriately with others and no limitations in her ability to understand and remember short, simple instructions. (T. 24). Plaintiff testified that the use of prescribed medications improved her overall mental health. After treatment, plaintiff was able to attend church groups and social meetings. (T. 29).

The ALJ determined that while plaintiff's impairments could reasonably be expected to cause her alleged symptoms, plaintiff's statements concerning intensity, persistence, and the limiting effects of these symptoms were not credible. The ALJ concluded that plaintiff's medical conditions were well-managed by prescription medications and determined plaintiff could return to her previous employment.

## C.    Opinion Evidence

The ALJ accorded plaintiff's primary care physician, Dr. Darah Wright's opinion limited weight. (T. 22). The ALJ found that Dr. Wright's conclusion that

plaintiff could not perform any activity was not supported by objective medical findings and was inconsistent with plaintiff's reported activities of daily living and improvement with medication. (T. 22). The ALJ also found that Dr. Wright's reports and opinions concerning plaintiff's mental health were inconsistent and noted the doctor lacked any medical specialty in the area of mental health. (T. 23).

Furthermore, the ALJ determined that the medical evidence was inconsistent with plaintiff's consultative examiner, Dr. Kristen Barry's opinion. (T. 24). The ALJ found the opinion was based on plaintiff's subjective complaints rather than any objective clinical evidence, and assigned the opinion minimal weight. (*Id.*). The ALJ accorded great weight to the medical evidence from plaintiff's therapist, Ziva Levy, who concluded plaintiff had only slight limitations in the ability to interact appropriately with others, and was not limited in her ability to understand short instructions. (T. 24).

Plaintiff testified that in the past 15 years, she had worked as a self-employed day care provider, a nursing aid, and a home health aid. (T. 35). Some of her duties included: lifting and transferring patients; standing nearly seven to eight hours per day; regularly lifting children who weighed approximately 30–40 pounds; and attending certification classes. (T. 35–40). The ALJ determined that plaintiff was capable of performing her past relevant work as a self-employed day care provider. (T. 25). The ALJ determined that plaintiff's past relevant work did not include the performance of work-related activities which were precluded by the plaintiff's RFC. (*Id.*).

## V.    PLAINTIFF'S CONTENTIONS

Plaintiff makes three arguments in support of reversal of the ALJ's determination:

(1)    The Administrative Law Judge's RFC determination was not supported by  substantial evidence due to the improper allocation of weight accorded to each medical source. (Pl.'s Mem. at 9–21).

(2)    The Administrative Law Judge failed to apply the appropriate legal standards in assessing plaintiff's credibility.  (Pl.'s Mem. at 21–24).

(3)    The ALJ's determination that plaintiff could return to her prior work is not supported by substantial evidence.  (Pl.'s Mem. at 24–25).

Defendant argues that substantial evidence supports the ALJ's determination.  For the following reasons, this court agrees with defendant, and will recommend dismissal of the complaint.

## VI.    DISCUSSION

Plaintiff argues the ALJ's failure to give appropriate weight to the medical opinions and to properly assess plaintiff's credibility renders the RFC determination unsupported by substantial evidence.  However, objective medical evidence found throughout the record supports the weight accorded to each physician, and inconsistencies in the plaintiff's testimony and in plaintiff's statements to her own doctors support the ALJ's credibility assessment.

### A. Residual Functional Capacity

#### 1. General Legal Standard

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *Id.* The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, 5:09-CV-1120, 2010 WL 3825629, at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *7).

#### 2. Treating Physician

##### a. Legal Standard

A treating physician's opinion is not binding on the Commissioner, and the opinion must be only given controlling weight when it is well supported by medical findings and ***not inconsistent with other substantial evidence***. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. § 416.927(d). If the treating

physician's opinion is contradicted by other substantial evidence, the ALJ is ***not***
required to give the opinion controlling weight. *Halloran v. Barnhart*, 362 F.3d 28,
32 (2d Cir. 2004). The ALJ must, however, properly analyze the reasons that the
report is rejected. *Id.* An ALJ may not arbitrarily substitute his own judgment for
competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

### b. Application

The ALJ accorded Dr. Wright's medical opinion limited weight. (T. 22). Dr.
Wright's reports consist of contemporaneous office treatment records and form-
reports, completed at the request of an agency. (*Compare* T. 219–30, 344, 359–61,
373, 390–96 *with* 362–63, 381–82, 407–411). The form-reports indicate substantial
restrictions on plaintiff's activities which are inconsistent with Dr. Wright's
contemporaneous progress notes, and with plaintiff's own activities. A review of all
Dr. Wright's reports shows these inconsistencies.

The ALJ found that plaintiff did not engage in substantial gainful activity from
the alleged date of onset, because plaintiff did not make enough money to consider the
work substantial gainful activity. In November of 2006, Dr. Wright's report
acknowledges plaintiff was working, but that she decreased her hours due to concerns
that her husband had been abusing drugs and/or selling them out of her home. (T.
386). Plaintiff also told Dr. Wright that she attributed her mental health condition to
these concerns about her husband. (*Id.*). Thus, it appears plaintiff did not stop
working because she could not physically or mentally perform the work, but rather for
the completely unrelated reason that she was worried about criminal activity in her

home while she was away working.[3] Although plaintiff did not perform substantial gainful activity, her activities during the period in question support the ALJ's finding that plaintiff was not totally disabled.

In February of 2007, Dr. Wright noted the plaintiff had a mental breakdown while *working*, and only after she failed to take Prozac for a two week period. (T. 394). The fact that plaintiff was again working, only a few months after she had stopped working because of alleged problems with her husband, demonstrates her impairments did not keep her from working. This time, plaintiff stopped working because she failed to take her medication for two weeks. Dr. Wright recommended plaintiff keep her appointments with a psychiatrist. (T. 395).

In a separate February 2007 examination, Dr. Wright noted plaintiff had "2+ deep tendon reflexes in her lower extremities bilaterally, 5/5 strength in her lower extremities bilaterally and good sensation. She has good range of motion in her hips although flexion elicits [the] pain. . . ." (T. 386). Plaintiff's respiratory condition was also described as "clear with no wheezes, rales or rhonchi." (T. 219, 331, 386). Additional treatment notes found throughout the medical record indicate that plaintiff reported great improvements with her breathing and satisfaction with the results obtained from her prescribed inhalers. (T. 219, 331). Dr. Wright concluded plaintiff's COPD was "well managed with Advair." (T. 219). While plaintiff was referred to a

---

[3] Although plaintiff did not work long enough at this particular job for the work to qualify as substantial gainful activity, it is noted that plaintiff was working as a "live-in" home health aide, four days per week. (T. 386). This work demonstrates plaintiff was capable of a lot more activity than she claims, or that Dr. Wright concluded in her form-reports.

pulmonary clinic, she missed two of her appointments and failed to see the recommenced specialist. (T. 219).

On June 26, 2007, Dr. Wright completed a "Physician's Statement for Determination of Employability," at the request of the Onondaga County Department of Social Services. (T. 407). Dr. Wright checked a box on this form, stating plaintiff was capable of "no [work] activity." (*Id.*). That opinion is however contradicted by objective findings in Dr. Wright's progress notes from the *same day*. In her progress notes, Dr. Wright stated while back pain may have affected the plaintiff's ability to sleep, ultimately the plaintiff's pain was "*not limiting as far as her activity. . . .*" (T. 396) (emphasis added). Dr. Wright also stated "plaintiff has full range of motion at her hips, including touching the toes with hip flexion, full extensions to 30 degrees, and side to side to about 45 degrees." (*Id.*). Dr. Wright again found the plaintiff's lungs were clear with no wheezes, rales, or rhonchi. (*Id.*). These statements of plaintiff's abilities are completely inconsistent with the form-report. The ALJ specifically noted this inconsistency. (T. 22).

In another form-report, dated October 24, 2007, Dr. Wright indicated the plaintiff would have a "very limited" ability to: walk, stand, push, pull, bend, and ability to lift or carry. (T. 382). Dr. Wright also found that plaintiff was very limited in her ability to climb stairs. (*Id.*). "Very limited" is defined as only able to perform the function for 1 to 2 hours per day. (T. 382). However, on the same page, in response to a question about "working conditions, environments or work activities that are contraindicated," Dr. Wright states "*heavy* lifting, *long periods* of standing or sitting." (*Id.*) (emphasis added).

Medical evidence found in other physicians' examinations also contradict Dr. Wright's opinion. X-rays of plaintiff's spine taken in February of 2007 found no harmful pathology. (T. 268). Consultative physician, Dr. Shayevitz also found plaintiff to be "in no acute distress, had a normal stance, used no assistive devices, and needed no help changing for the examination or getting on and off the exam table." (T. 267). It was further noted plaintiff possessed full range of motion and strength in her upper and lower extremities, physiologic and equal deep tendon reflexes, no motor or sensory deficits, no muscle atrophy, and intact dexterity. (*Id*.). On December 20, 2007, Dr. Xiwu John Sun stated in a progress report that plaintiff had "considerably improved exercise tolerance" with respect to her respiratory condition, "to the point where she is quite active although she pushes herself sometimes and gets quite fatigued." (T. 331). Dr. Sun stated plaintiff was feeling "quite well," there was no shortness of breath, with the exception of cold weather. Dr. Sun also noted plaintiff's fatigue was "significantly improved," and there were no sarcoid-type lesions found on any parts of plaintiff's body. (*Id*.).

Finally, while Dr. Wright is plaintiff's primary care physician, the ALJ was correct in stating that Dr. Wright did not have any expertise in mental impairments. On July 11, 2008, Dr. Wright stated that plaintiff was "rather anxious," but the reason was that she was out of her medication. (T. 373.) During the same examination, Dr. Wright also stated plaintiff had "kept good energy level although she needs to find things for herself to do during the day, so that she does not sit inside and start to worry." (*Id*.). Plaintiff's lungs were clear, and although her back was tender, there were no spasms and she had a full range of motion in her back, albeit with pain. (*Id*.).

Although Dr. Wright referred plaintiff to physical therapy, she was discharged for "poor attendance" after participating only in the initial visit.[4] (T. 377).

A review of the medical evidence shows Dr. Wright's conclusory statements that plaintiff could do no work activity, and her restrictive RFC of October 2007 are inconsistent with her own contemporaneous progress notes and other substantial evidence. Thus, the ALJ was not required to give Dr. Wright's conclusions controlling weight.

### 3. Substantial Evidence

#### a. Legal Standard

The law is clear that in supporting his decision with substantial evidence, the ALJ cannot pick and choose only the parts of the record that support his determination, without affording consideration to the evidence supporting plaintiff's claim. *Credle v. Astrue*, No. 10-CV-5624, 2012 WL 4174889, at *17, 2012 U.S. Dist. LEXIS 134126 (E.D.N.Y. Sept. 19, 2012) (citing *Stewart v. Astrue*, No. 10-CV-3032, 2012 WL314867, 2012 U.S. Dist. LEXIS 12098 (E.D.N.Y. Feb. 1, 2012)). The Commissioner considers data provided by physicians, but draws his own conclusions as to whether the data supports a finding of disability. *Id.* (citing *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)). To the extent that those reports are inconsistent, conflicts in the evidence are for the ALJ to resolve. *Netter v. Astrue*, 272 F. App'x 54, 56 (2d Cir. 2008) (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). The ALJ need not reconcile every shred of evidence in support of his decision. *Barringer*

---

[4] When plaintiff was evaluated for physical therapy on March 20, 2008, her range of motion and strength was within functional limits, and she was found to be "normal" neurologically. (T. 379).

*v. Commissioner of Soc. Sec.*, 358 F. Supp. 2d 67, 78–79 (N.D.N.Y. 2005) (citations omitted). The ultimate determination of whether a plaintiff is disabled or "unable to work" is reserved for the Commissioner. *Credle v. Astrue*, at *17 (citing 20 C.F.R. § 404.1527(d)).

### b.    Application

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because he failed to give appropriate weight to the opinions of Dr. Shayevitz and Dr. Barry, while improperly giving weight to the opinion of therapist, Ziva Levy.

### i.    Dr. Shayevitz

Dr. Shayevitz is a consultative physician who examined plaintiff on February 26, 2007. (T. 269). The ALJ gave minimal weight to Dr. Shayevitz's opinion that plaintiff would have difficulty with anything that required heavy lifting or forward flexion of the back, and that plaintiff would have significant difficulty with shortness of breath on any kind of activity that required sustained physical action such as prolonged walking. (T. 21). The ALJ noted that Dr. Shayevitz only examined plaintiff on one occasion, and that the statements about her limitations conflicted with other evidence in the record. X-rays of plaintiff's lumbosacral spine, taken in February of 2007 showed that the vertebral heights and disc spaces were maintained. (T. 270). No bony or disc space pathology was identified. (*Id.*). Dr. Shayevitz's examination notes reveal that, although there was some lumbar tenderness, plaintiff had 80-degree forward flexion, 25-degree lateral flexion, and had stable joints without tenderness. (T. 268).

While Dr. Shayevitz concluded that plaintiff "may have difficulty with anything which required repetitive heavy lifting and forward flexion of the back," the doctor also stated plaintiff was "able to squat part of the way down and she came back up" (T. 269, 267), she could rise from a chair without difficulty, needed no help getting on and off the exam table, and used no assistive devices when walking (T. 267). The ALJ pointed out that despite Dr. Shayevitz's comment about plaintiff's limited ability to walk, she was able to walk a mile to the consultative examinations. Dr. Shayevitz's opinion regarding plaintiff's shortness of breath is also contradicted by Dr. Sun's December 2007 report, which stated plaintiff had considerably improved exercise tolerance and often pushed herself too much. (T. 331). Dr. Sun's report also stated that plaintiff's respiratory impairment remained "stable." (*Id.*). The ALJ's decision to accord Dr. Shayevitz's report minimal weight is supported by substantial evidence.

### ii.  Dr. Barry

On February 26, 2007, Dr. Kristen Barry performed a consultative psychological evaluation on plaintiff. (T. 277–281). Although the ALJ accorded portions of Dr. Barry's opinion minimal weight, the opinion in general is largely consistent with the RFC as stated by the ALJ. Dr. Barry concluded plaintiff could perform simple and some complex tasks, could learn new tasks, and could maintain attention and concentration. (T. 280). Dr. Barry stated that plaintiff had no delusions, no auditory hallucinations, had fair social skills, was coherent, was goal directed, could do simple calculations, and was able to perform activities of daily living, including: self-dress, bathing, grooming, laundry, cooking and cleaning. (T. 277–79).

Although not related to her mental evaluation, Dr. Barry also noted that plaintiff had walked a mile to the appointment. (T. 280).

While Dr. Barry opined that plaintiff "*may* have difficulty. . . relating adequately to other people," other evidence in the record is inconsistent with this finding. (T. 279) (emphasis added). Plaintiff reported using public transportation, going out alone, going shopping, socializing with people at a coffee house once a week, going to a group help session, and attending church events. (T. 56, 58, 59, 60).

Plaintiff argues that Dr. Barry's report supports plaintiff's alleged difficulties in relating to others and handling stress. (Pl.'s Mem. at 16). Dr. Barry noted that plaintiff stated that she did not socialize with her family. (T. 279). At the hearing, plaintiff testified that she did not even talk on the telephone with her children and other relatives. (T. 55). She also stated being around people made her nervous. (T. 64).

However, in April of 2007, Dr. Wright stated plaintiff was having a difficult time, but that plaintiff "spent several weeks in Florida," following a death in the family. (T. 395). Dr. Wright further reported plaintiff's nephew had been shot, and that plaintiff was "doing a lot to help care for her family." (*Id.*). These statements are inconsistent with Dr. Barry's opinion, and the February 2007 mental status examination which found that plaintiff would have difficulty dealing with stress, as plaintiff was helping her family deal with three deaths and the shooting of her nephew. Plaintiff also traveled to Florida after one of the deaths. (T. 385). This statement in Dr. Wright's report is also inconsistent with plaintiff's testimony that she had very little to do with her family and did not even speak with them on the telephone. The

fact that plaintiff would travel to Florida to help members of her family deal with what was probably one of the most stressful times for a family, is completely inconsistent with a statement that plaintiff would have difficulty dealing with stress herself. Furthermore, the mental status examination *supports* plaintiff's ability to "follow and understand simple directions and instructions" and her ability to live independently. (T. 279–80). The ALJ's decision to accord Dr. Barry's conclusion minimal weight is supported by substantial evidence.

### iii.    Ziva Levy

Ziva Levy, a social worker, treated plaintiff from May 21, 2007 through September 19, 2007. (T. 321). Ms. Levy's assessment indicated plaintiff's mental symptoms had improved with treatment and medication. (T. 219, 222, 279, 324). While Ms. Levy is not an "acceptable medical source" for purposes of "establishing" the existence of an impairment, her opinion may be considered for purposes of showing the severity or the limiting effects of the plaintiff's impairment. 20 C.F.R. § 404.1513(d). Other medical records support a finding that plaintiff was consistently oriented, cordial, and able to carry out and remember short simple instructions. (T. 253, 258, 280). Ms. Levy completed a mental RFC form, in which she found that plaintiff's ability to interact appropriately with the public was affected "slightly," but that plaintiff had no impairment in the ability to interact appropriately with supervisors and co-workers. (T. 326–27). Ms. Levy further found plaintiff had no limitation in the ability to respond appropriately to pressure at work and to changes in a routine work setting. (*Id.*).

Although her reports do not contain long narrative explanations, Ms. Levy's findings are consistent with other objective medical evidence found in the record and substantial evidence supports the legal weight accorded to her opinion. Plaintiff's counsel argues the ALJ's statement that plaintiff participated in a "vast array of activities" was not supported by the evidence. Counsel states that the ALJ does not mention these activities, however, the ALJ mentions that during the period in question, plaintiff engaged in some work as a home health aide and she volunteered at the State Fair. (T. 25 citing *inter alia* T. 212 (job history)). Plaintiff met her own personal needs, prepared meals, did laundry, shopped once per week, read the newspaper, used public transportation, attended church, and went to "groups." (T. 267, 331 (volunteering and more activities with her family)). Thus, the weight given to Ms. Levy's reports is supported by substantial evidence.

### 4. Credibility

#### a. Legal Standard

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. March 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. *See* 20 C.F.R. § 404.1529; *see also Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. March 3,

1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged. . . ." 20 C.F.R. § 404.1529(a). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work. *Id.* § 404.1529(c).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. *Id.* § 404.1529(c)(3).

### b. Application

The ALJ discounted plaintiff's credibility for many of the same reasons used to determine plaintiff's RFC, particularly the inconsistencies in her testimony. Plaintiff's work activity during the period in question and the reasons that she stopped working support the ALJ's determination that her claims of pain were not credible to the extent

that they were inconsistent with her ability to perform medium work. In addition, the medical records support the ALJ's determination. Examination records from several different doctors do not substantiate the intensity, persistence, or limiting effects alleged by plaintiff. (T. 267, 268, 270, 277, 283). This is particularly true based upon plaintiff's reported statements to these physicians, including plaintiff's statement to Dr. Wright that plaintiff's back pain was "not limiting as far as her activities." (T. 396). As discussed above, the same inconsistencies, together with the medical evidence support the ALJ's findings regarding the limitations imposed by plaintiff's COPD as well as by her mental impairment. Thus, the ALJ's decision to reject plaintiff's credibility was supported by substantial evidence.

### B.    Past Relevant Work

#### 1.    Applicable Law

At Step 4 of the Commissioner's analysis, a claimant's past relevant work must be assessed. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is work that a claimant has performed in the past 15 years and constituted substantial gainful activity. 20 C.F.R. § 404.1565(a), (b). If the claimant can still do past relevant work, the Commissioner will find the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). Where substantial evidence supports the ALJ's conclusions as to whether plaintiff's RFC allows plaintiff to perform her past relevant work, it is unnecessary to remand the case for further development of the record. *See Stenoski v. Comm'r of Social Security*, 7:07-CV-552, 2010 U.S. Dist. LEXIS 24030, at *16–17, 2010 WL 985367 (N.D.N.Y. March 16, 2010). Plaintiff has the burden to show that she cannot perform her past relevant work, either as she previously performed it or as it is

performed in the national economy.  *Jasinski v. Barnhart*, 341 F.3d 182, 285 (2d Cir. 2003) (citing *Jock v. Harris*, 651 F.2d 133, 135 (2d Cir. 1981); SSR 82-62, 1982 WL 31386 (SSA 1982)).

### 2.    Application

The ALJ found that plaintiff could return to her past relevant work as a self-employed day care provider.  Plaintiff worked as a day care provider from 2000 through 2003, and testified that during that time she stood and walked for the majority of the time and lifted and carried 30 to 40 pounds.  (T. 37–39).

As discussed above, substantial evidence supports the ALJ's determination that plaintiff had the RFC to perform a range of medium work with the additional mental limitations cited by the ALJ, and therefore plaintiff could perform her past relevant work as a self-employed day care provider as she last performed it.  The ALJ's decision that plaintiff was not disabled under the Social Security regulations should be affirmed.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED,** that the decision of the Commissioner be **AFFIRMED,** and the complaint be **DISMISSED IN ITS ENTIRETY.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d

85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d

15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: December 3, 2012

Hon. Andrew T. Baxter
U.S. Magistrate Judge